IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

VINCENT BAISI,

            Plaintiff,

v.                                            CIVIL ACTION NO. 3:25-0541

LIEUTENANT JAMES PHILLIPS,
CORPORAL WOODS,
CORRECTIONAL OFFICER CASTEEL,
LIEUTENANT EDWARDS,
MAJOR PAULEY,
CORRECTIONAL OFFICER ALBRIGHT, and
JOHN/JANE DOES,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Lieutenant James Phillips, Corporal Woods, Correctional Officer Casteel, Major Pauley, and Correctional Officer Albright's Motion to Dismiss Plaintiff's Complaint. ECF No. 11.[1] Plaintiff Vincent Baisi opposes the motion. For the following reasons, the Court **DENIES** Defendants' motion.

**I.
FACTUAL BACKGROUND**

On September 5, 2025, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Defendants in their individual capacities. *Compl.* ¶4, ECF No. 1. Plaintiff asserts that on or about November 27, 2023, he was incarcerated at the Western Regional Jail as a pretrial detainee. *Id.* ¶8.

---

[1] These Defendants are represented by the same counsel. Defendant Edwards is represented by different counsel, and he is not included in this motion. For purposes of this Opinion, the Court refers to the moving Defendants collectively as "Defendants."

Upon his arrival, a nurse told correctional officers that "Plaintiff was a post-operative cancer patient who had undergone chemotherapy" and he should not be x-rayed. *Id*. Nevertheless, Plaintiff states that Defendant Casteel and Defendants John/Jane Does required him to go through an x-ray machine to search for contraband. *Id*. Believing the x-ray showed "something," Plaintiff was required to remove his clothes, was x-rayed again, and placed in a holding cell for hours. *Id*.

During the next shift, Plaintiff states that Defendant Woods and the Doe Defendants required him to be x-rayed again. *Id*. ¶9. Afterwards, Defendant Woods handcuffed him behind his back and put him in a temporary holding cage. *Id*. Plaintiff asserts he followed orders, was never a threat or combative to himself or others, and tried to explain that the abnormality on his x-ray was hernia mesh from his cancer surgery. *Id*. ¶¶9, 12. Nevertheless, Plaintiff contends he was left handcuffed behind his back and in the temporary holding cage for approximately twenty-eight hours and then moved to a holding cell where he remained handcuffed for another forty-eight hours. *Id*. ¶¶9, 10. Plaintiff claims he experienced severe pain and injury by being handcuffed behind his back for over seventy hours, he was not provided with timely bathroom breaks and urinated on himself, and he was x-rayed eleven times despite medical advice that he should not be x-rayed at all. *Id*. ¶¶10, 13.

Plaintiff alleges that "Defendants Phillips, Edwards, Albright, Pauley, Casteel and Woods were all senior correctional officers who were working in booking and in charge of the decision to keep [him] in handcuffs for an extended period of time." *Id*. ¶11. He further claims these Defendants "had knowledge of how long [he] had been handcuffed in a temporary holding cage and holding cell, and ordered/allowed Plaintiff to continue to be in restraints for over seventy hours total." *Id*. According to Plaintiff, these same Defendants "each had the authority and the ability to release [him] from restraints and stop him from being handcuffed behind his back for over seventy

hours." *Id*. Plaintiff asserts Defendants' "reckless, willful, and intentional acts" included ignoring medical advice and keeping him handcuffed for such an extraordinary time period. *Id*. ¶¶12, 13.

In Count I, Plaintiff claims this conduct violated his Eighth and Fourteenth Amendment rights against excessive force and cruel and unusual punishment. In Count II, Plaintiff alleges Defendants' conduct constitutes deliberate indifference. Defendants now move to dismiss Plaintiff's Complaint based upon failure to state a claim and qualified immunity.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the courts look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level[.]" *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.
## DISCUSSION

### A.
### Pretrial Detention Standard
### Under the Fourteenth Amendment

To start, the Court distinguishes claims brought by pretrial detainees from those brought by convicted prisoners. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment against "the use of excessive force that amounts to punishment.'" 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). When excessive force is alleged, a pretrial detainee can prevail when an action is "taken with an 'expressed intent to punish'" or "by showing that the

actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 397-98 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979)). As what "might" be the case when a convicted prisoner brings a claim for cruel and unusual punishment under the Eighth Amendment, it is unnecessary to determine "when punishment is unconstitutional" for pretrial detainees because "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." *Id.* at 400-01 (internal quotation marks and citations omitted). The Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was *objectively* unreasonable." *Id.* at 396-97 (italics added). It is unnecessary for a pretrial detainee to show that a defendant *subjectively* was aware the force used was unreasonable under the Eighth Amendment. *Id.* at 391-92.

Under the objective unreasonableness standard, a court must consider the circumstances "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397 (citation omitted). Where jails are concerned, the court must factor in the need to manage and maintain order and security at the facility and give appropriate deference to jail officials in making those judgments. *Id.* (citation omitted). In deciding whether the amount of force used was reasonable or unreasonable, a court may consider such things as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citation omitted).

While *Kingsley* involved excessive force, in *Short v. Hartman*, 87 F.4th 593 (2023), the Fourth Circuit extended the objective standard to pretrial detainees who make claims of deliberate

indifference under the Fourteenth Amendment.[2] While a pretrial detainee may be able to show a subjective intent to punish and meet the more demanding Eighth Amendment test, it is unnecessary to do so. 87 F.4th at 609, 612. Under the objective test, it is sufficient if a pretrial detainee can "show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 611 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). The Fourth Circuit made clear that mere negligence is not enough. *Id*. at 612.

### B.
### Plausibility of Plaintiff's Claims

In light of the above, the Court now must decide whether Plaintiff has stated a plausible claim for excessive force and cruel and unusual punishment in Count I and for deliberate indifference in Count II. Taking the evidence in the light most favorable to Plaintiff, the Court finds he has plausibly stated both claims. According to Plaintiff, a nurse at the jail told the correctional officers he had undergone chemotherapy and surgery for cancer and should not be x-rayed. Nevertheless, over the course of the next seventy-plus hours he was x-rayed eleven times in search of contraband because the x-rays showed "something." Plaintiff states he explained that it was the hernia mesh from his cancer surgery, but Defendants ignored the facility's own medical staff and Plaintiff's explanation. Although Plaintiff claims he never was combative or threatening and followed all orders, Defendants handcuffed him behind his back, locked him in a holding cage and holding cell, and denied him timely bathroom breaks, which caused him to urinate on himself.

---

[2]In both their Motion and Reply, Defendants argue that the subjective test applies to deliberate indifference claims, and Plaintiff's claim cannot survive because he has failed to show the subjective awareness of each individual Defendant. However, the subjective awareness clearly is no longer the standard that applies in light of the Fourth Circuit's decision in *Short*. Plaintiff only must meet the objective unreasonableness standard.

He also asserts that the handcuffs were "tightened to the point of causing pain and numbness," and he suffered physical injury. *Compl.* ¶¶13, 18, 39.

The Court recognizes that Defendants have a difficult job, which includes maintaining order, control, and safety at the jail. *Kingsley*, 576 U.S. at 399-400 (stating "a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices need to maintain order and institutional security is appropriate"). As part of that job, it is common knowledge that jail officials are responsible to search pretrial detainees for contraband when they arrive at a facility. However, in this case, the Court finds Plaintiff has set forth a plausible claim under the Fourteenth Amendment that his treatment was excessive compared to what was actually necessary to maintain order, control, and safety. Certainly, a reasonable officer on the scene could believe Plaintiff's treatment was objectively excessive given knowledge that he was noncombative and cooperative and that he had cancer surgery with hernia mesh implanted.

Likewise, the Court finds that the allegations are sufficient to state a plausible claim of deliberate indifference. To show deliberate indifference to the conditions of confinement under the Fourteeenth Amendment, a pretrial detainee must show (1) a "deprivation of a basic human need that is objectively sufficiently serious," and (2) "the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or obvious that should be known." *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025) (internal quotation marks and citations omitted).

At the first step, Plaintiff asserts that he was subjected to torture by being tightly handcuffed behind his back for over seventy hours, when he presented no threat to anyone or anything. "As a direct and proximate result," Plaintiff claims he "incurred physical injury, pain and suffering and severe emotional distress." *Compl.* ¶39. Plaintiff further asserts there was no penological

justification for such extreme actions. As Defendants' motion is one to dismiss and the Court must accept the factual allegations in favor of Plaintiff, the Court finds that Plaintiff has plausibly alleged that tightly handcuffing him behind his back for over seventy hours to point of causing injury, pain, and numbness and without adequate bathroom breaks was excessive and cruel and presented an objectively sufficiently serious deprivation of a basic human need. The Court further finds that, under the circumstances alleged in this case, Plaintiff plausibly alleges that it should have been obvious and/or a reasonable officer should have known that leaving a post-operative cancer patient tightly handcuffed behind his back for such an extensive period of time constitutes punishment and an unjustifiably high risk of injury. Therefore, the Court finds Plaintiff's claim survives this hurdle.

Defendants also complain that Plaintiff's allegations do not identify what each individual Defendant did. However, Plaintiff alleges each Defendant is liable because, working in booking, they each ignored the medical staff, had knowledge of how long he was handcuffed, had authority to release him from restraints, and were in charge of the decision to keep Plaintiff handcuffed. Under the circumstances of this case, the Court finds the fact Plaintiff assets these allegations apply to each individual Defendant is sufficient to defeat dismissal.

## C.
## Qualified Immunity

Defendants further argue, however, that they are entitled to qualified immunity. "Qualified immunity fundamentally concerns itself with fair notice. It shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022) (internal quotation marks and citations omitted). Defendants have the burden to demonstrate

qualified immunity applies. *Gelin v. Maryland*, 132 F.4th 700, 713 (4th Cir. 2025) (citation omitted).

As stated by the Fourth Circuit in *King v. Riley*, 76 F.4th 259 (4th Cir. 2023), qualified immunity typically shields government officials who are sued in their individual capacity "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 264-65 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); footnote omitted). However, a plaintiff may overcome qualified immunity by showing "(1) that the government official violated a statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct." *Id.* (citation omitted). Additionally, the Fourth Circuit has carved out an exception for deliberate indifference claims by holding that "officials who are aware that their conduct is constitutionally deficient cannot rely on the clearly established prong[.]" *Id.* (citations omitted). For instance, it is unnecessary to show a "right was clearly established" when "context makes the violation 'obvious' and case law is thus not needed to establish this awareness.'" *Id.* (citations omitted). Conversely, if the official is unaware, the official is entitled to the two-step approach. *Id.* Under the two-step approach, the Court may start with either question. *Gelin,* 132 F.4th at 713 (citation omitted). If the answer to either question is "no," the claim is barred by qualified immunity. *Id.*

As previously stated, Plaintiff asserts that Defendants violated his constitutional right against excessive force and cruel and unusual punishment in Count I. Nevertheless, Defendants argue they are entitled to qualified immunity because they did not violate any clearly established law by handcuffing a pretrial detainee for an extended period of time when they had a security concern given the abnormality on his x-ray. However, Defendants' argument ignores Plaintiff's allegations.

Plaintiff alleges that the medical staff told Defendants he had cancer surgery and should not be x-rayed, but medical staff was ignored and Plaintiff was x-rayed eleven times. Plaintiff also asserts they disregarded his explanation that the abnormality was his hernia mesh. Although the Court is not suggesting that prison officials must believe everything a pretrial detainee tells them, his statement was consistent with what the medical staff purportedly told Defendants. It also would seem that a follow up with the medical staff—after the first ill-advised x-ray—may have eliminated their concern that Plaintiff was internally harboring contraband. Moreover, it is near certain that the size and location of the hernia mesh never changed from one x-ray to next, indicating he did not swallow contraband that was passing through his digestive system, and further affirming that the "something" on the x-ray was not contraband. Despite the fact that Defendants' purported safety concerns may have been easily abated and Plaintiff asserts he was fully cooperative and never presented any threat to others, property, or himself, Defendants allegedly handcuffed him tightly behind his back for over seventy hours to the point of injury, locked him in a cage and cell, and denied him timely bathroom breaks. Assuming the truth of Plaintiff's allegations, it is at least plausible that Defendants' actions crossed the threshold from what was objectively reasonable to ensure safety at the facility to the point of excessive force and cruel and unusual punishment. As it is beyond dispute and was very well established at the time that pretrial detainees have a constitutional right not to "be punished at all, much less maliciously and sadistically,"[3] the Court denies Defendants' Motion to Dismiss based upon qualified immunity at to Count I.

Turning to Plaintiff's claim of deliberate indifference in Count II, it bears repeating that the Fourth Circuit has stated that qualified immunity does not protect those who knowingly ignore

---

[3] *Kingsley*, 576 U.S. at 400-01 (internal quotation marks and citations omitted).

the law and "sometimes, context makes the violation 'obvious' and case law is thus not needed to establish this awareness." *King*, 76 F.4th at 265 (citations omitted). In support of his argument that qualified immunity does not apply, Plaintiff cites *Hope v. Pelzer*, 122 U.S. 2508 (2002). In *Hope*, an inmate was handcuffed to a hitching post to punish him for disruptive conduct. 122 U.S. at 733. The Supreme Court held that "[t]he obvious cruelty inherent in this practice should have provided [the prison guards] with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment." *Id*. at 745. Although Defendants are correct that *Hope* is factually different than the present case,[4] the concept that obviously cruel acts should put prison officials on notice of a constitutional violation is, nevertheless, relevant to this Court's analysis. Here, Plaintiff has alleged facts, assuming their truth, that are sufficient to state a claim that his treatment as a pretrial detainee was so obviously excessive, cruel, and unnecessary that a reasonable prison official should have been on notice of a constitutional violation. Therefore, the Court denies Defendants' argument they are entitled to qualified immunity as to Plaintiff's deliberate indifference claim.

## IV.
## CONCLUSION

Accordingly, for the reasons set forth above, the Court **DENIES** Defendants Lieutenant James Phillips, Corporal Woods, Correctional Officer Casteel, Major Pauley, and Correctional Officer Albright's Motion to Dismiss Plaintiff's Complaint. ECF No. 11.

---

[4]Hope was an inmate, not a pretrial detainee, and handcuffed to a hitching post on two occasions to punish him for his prior actions. *Id*. at 734. On the second occasion, Hope was handcuffed to the post for seven hours in the hot sun without a shirt, provided little water, no bathroom breaks, and taunted by a guard. *Id*. at 734-35. Although "the lack of proper clothing, water, or bathroom breaks" were mentioned, the Supreme Court found, as did the Court of Appeals, that handcuffing the petitioner to the hitching post sufficed as the unconstitutional act. *Id*. at 747 (internal quotation marks and citation omitted).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:      February 27, 2026

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE